UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RODNEY MARTIN KYLES, | : | |
|     Plaintiff, | : | CASE NO. 3:18-CV-1627 (MPS) |
| | : | |
| v. | : | |
| | : | |
| OMPRAKASH PILLAI, M.D., et al. | : | |
|     Defendants. | : | November 6, 2018 |

## INITIAL REVIEW ORDER

On June 14, 2018, the plaintiff, Rodney Martin Kyles, an inmate currently confined at the MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut, brought a civil action *pro se* under 42 U.S.C. § 1983 against Dr. Omprakash Pillai and Nursing Supervisor Tawanna Furtick for violating his Eighth Amendment protection against cruel and unusual punishment. Compl. (ECF No. 1). He seeks damages, preliminary injunctive relief, and declaratory relief. *Id.* ¶¶ 18-20. On October 5, 2018, Magistrate Judge William I. Garfinkel granted the plaintiff's motion to proceed *in forma pauperis* (ECF No. 6). For the following reasons, the complaint may proceed against the defendants.

I.     <u>Standard of Review</u>

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell*

*Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II. Factual Allegations

In 2009, the plaintiff was diagnosed with a neurological disorder. Compl. ¶ 1. In 2010, he underwent L3-4 and L4-5 bilateral laminectomies, which alleviated many of his painful symptoms. *Id.* However, in March of 2017, many of his painful symptoms resurfaced, and the medication regimen he was on became ineffective in treating the pain. *Id.* In October 2017, the plaintiff received an epidural steroid injection ("ESI"), which only relieved his pain for five days. *Id.*

On May 9, 2017, the plaintiff went to UConn Medical Center and underwent a second MRI. Compl. ¶ 2. Afterward, he was diagnosed with discopathy. *Id.* A third MRI on July 17, 2017 revealed severe multi-level spinal stenosis. *Id.*

On several occasions from May to October of 2017, the plaintiff wrote Inmate Requests to Dr. Pillai regarding his chronic pain and the inadequacy of his treatment regimen. Compl. ¶ 2; Pl.'s Exs. I, J, K, L, M, N, O, P (ECF No. 1 at 24-31). He wrote a grievance against the medical unit at MWCI on October 24, 2017, which went unanswered. Compl. ¶ 2; Pl.'s Ex. Q (ECF No. 1 at 32).

On November 28, 2017, the plaintiff met with an orthopedics specialist, Dr. Shantay Wells. Compl. ¶ 2. Dr. Wells advised the plaintiff that he had two options: (a) obtain another ESI, or (b) surgery. *Id.* at ¶ 3. Dr. Wells recommended that surgery remain as the plaintiff's last option, and the plaintiff opted to receive another ESI. *Id.*

On February 7, 2018, the plaintiff received another ESI, which alleviated much of his chronic pain. Compl. ¶ 4. However, on March 3, 2018, the plaintiff was readmitted to UConn Medical Center for a period of three weeks. *Id.* at ¶ 5. While in the hospital, the plaintiff mostly remained lying on his back and "never once . . . experience[d] any pain or numbness . . . ." *Id.*

The plaintiff returned to MWCI on two occasions and was sent to the infirmary. Compl. ¶ 6. There, he remained lying on his back without experiencing any numbness or pain. *Id.* Upon discharge from the infirmary, the plaintiff returned to his housing unit. *Id.* at ¶ 7. He was given a new mattress on March 30, 2018. *Id.* By the end of May 2018, however, he began experiencing numbness and pain while lying down, regardless of his position. *Id.* He experienced numbness and pain on both sides of his body, including his shoulders, hips, legs, and feet. *Id.*

On June 24, 2018, the plaintiff submitted an Inmate Request to Captain Patton requesting a second mattress to alleviate his pain, but Patton would not authorize a second mattress. Compl. ¶ 8; Pl.'s Ex. Y (ECF No. 1 at 40). He sent another request to the medical department on July 19 complaining about his pain and the lack of sleep he was receiving. Compl. ¶ 9; Pl.'s Ex. Z (ECF No. 1 at 41). The responding staff member stated that she would schedule the plaintiff to meet with his provider. Pl.'s Ex. Z.

3

The plaintiff submitted an Inmate Request and a Request for Reasonable Accommodations ("RRA") to his unit manager seeking a hospital mattress for his condition, similar to the one he had while at UConn Medical Center and in the infirmary at MWCI that alleviated his pain. Compl. ¶ 10; Pl.'s Exs. 2, 3 (ECF No. 1 at 43, 44). The unit manager wrote in response that the plaintiff would have to wait one year to receive a new mattress unless the medical department orders otherwise. Pl.'s Ex. 3.

On August 16, 2018, Dr. Pillai sent Nurse Vivian Martell to speak with Nursing Supervisor Furtick and explain the plaintiff's medical condition in an attempt to obtain a second mattress for him. Compl. ¶ 11. Furtick refused to provide the second mattress. *Id.* The plaintiff sent her an Inmate Request the next day asking why she had refused to provide a second mattress when it appeared that Dr. Pillai had approved it. *Id.* at ¶ 14; Pl.'s Ex. 5 (ECF No. 1 at 46). Another official named C. Boilard responded to the request stating that "[n]o one is approved for a double mattress." Pl.'s Ex. 5. The plaintiff later filed a grievance against Furtick regarding the denial of the double mattress, which went unanswered. Compl. ¶ 16; Pl.'s Ex. 7 (ECF No. 1 at 48).

On August 20, the plaintiff received a new regular mattress, not a hospital mattress. Compl. ¶ 13. He experienced the same problems with new mattress as before, including pain and numbness in his legs and feet. *Id.* He continued to experience pain while lying down on the mattress, and thus, he sent requests to Dr. Pillai about the problem. *Id.* at ¶ 15; Pl.'s Ex. 8 (ECF No. 1 at 49). He submitted another RRA on September 10, 2018 inquiring about the hospital mattress, to which an official responded that his request was under review. Pl.'s Ex. 9 (ECF No. 1 at 50).

III. <u>Analysis</u>

The plaintiff claims that Dr. Pillai and Nurse Furtick violated his Eighth Amendment protection against cruel and unusual punishment by acting with deliberate indifference to his serious medical needs, specifically, his severe spinal and neurological problems. To state a claim for deliberate indifference to a serious medical need, the plaintiff must show both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, the defendants must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983; *see id.* at 280; nor does a difference of opinion regarding what constitutes an appropriate response and treatment. *See Ventura v. Sinha*, 379 F. App'x 1, 2–3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

After reviewing the allegations in the complaint, the Court concludes that the plaintiff has satisfied the objective component of the Eighth Amendment standard. It is

apparent that he suffers from severe spinal and neurological problems that cause him pain and numbness, particularly when he is lying down on the mattress in his cell. The plaintiff also alleges that he communicated his medical condition to Dr. Pillai on numerous occasions, but Dr. Pillai repeatedly refused to provide him with treatment or any reasonable accommodation for his condition. *See* Compl. ¶¶ 2, 10. Based on the severity of the plaintiff's medical condition and the number of alleged occurrences where Dr. Pillai refused to offer treatment or respond to the plaintiff's complaints, the Court concludes that the plaintiff has stated a plausible claim of deliberate indifference to serious medical needs against Dr. Pillai.

As for Nurse Furtick, the plaintiff alleges that she refused to provide the plaintiff with a double mattress after Dr. Pillai sent Nurse Martell to speak with her about the plaintiff's medical condition. Compl. ¶ 11. This Court has previously rejected an Eighth Amendment claim based on the failure of a prison official to provide an inmate with a double mattress. *DeAngelis v. Farinella*, No. 3:16-CV-307 (MPS), 2017 WL 4683996, at *10-11 (D. Conn. Oct. 18, 2017). However, unlike in *Farinella*, the plaintiff in this case alleges facts supporting a reasonable inference that Dr. Pillai authorized a double mattress for him and that Nurse Furtick nevertheless refused to provide him with one. *See* Compl. ¶¶ 11, 14. The Court will, therefore, permit the Eighth Amendment claim to proceed against Nurse Furtick based on her failure to provide a double mattress for the plaintiff, despite Dr. Pillai's authorization.

The plaintiff does not specify whether he is suing the defendants in their individual capacities, their official capacities, or both. He may not, however, obtain damages against the defendants in their official capacities. *See Kentucky v. Graham*, 473

U.S. 159 (1985) (Eleventh Amendment bars claims for damages against state officials in official capacities). All such claims are dismissed under 28 U.S.C. § 1915A(b)(2). The case may, therefore, proceed against the defendants in their individual capacities for damages and in their official capacities for declaratory and injunctive relief.

Nothing in this order should be construed as prohibiting the defendants from moving to dismiss any claim that, in counsel's judgment, fails under Fed. R. Civ. P. 12(b)(6).

## ORDERS

(1) The complaint may proceed against the defendants in their individual capacities for damages and in their official capacities for declaratory and injunctive relief.

(2) The Clerk shall prepare a summons form and send an official capacity service packet, including the complaint (ECF No. 1) to the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants, Dr. Omprakash Pillai and Nurse Tawanna Furtick, in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within **thirty (30) days** from the date of this order.

(3) The Clerk shall verify the current work addresses for Pillai and Furtick with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to those defendants at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S.

Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he

should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendants or defense counsel of his new address.

It is so ordered.

Dated at Hartford, Connecticut this 6th day of November 2018.

/s/
Michael P. Shea
United States District Judge