UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RODNEY MARTIN KYLES, | : | |
|     Plaintiff, | : | CASE NO. 3:18-CV-1627 (MPS) |
| | : | |
| v. | : | |
| | : | |
| OMPRAKASH PILLAI, M.D., et al. | : | |
|     Defendants. | : | September 4, 2019 |

_____

**RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTIVE RELIEF,
ECF Nos. 28, 33, 34**

Pending before this Court is the plaintiff's second motion for preliminary injunctive relief, ECF No. 28, and cross-motions for summary judgment filed by both parties, ECF Nos. 33, 34. For the following reasons, the Court will GRANT in part and DENY in part the defendants' motion for summary judgment, DENY the plaintiff's motion for summary judgment, and schedule this case for a consolidated trial on the merits and hearing on the second motion for preliminary injunctive relief, in accordance with Federal Rule of Civil Procedure 65(a)(2).

I.     Procedural History

On June 14, 2018, the plaintiff, Rodney Martin Kyles, an inmate currently confined at the MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut, brought a civil action *pro se* under 42 U.S.C. § 1983 for monetary, injunctive, and declaratory relief against Dr. Omprakash Pillai and Nursing Supervisor Tawanna Furtick for violating his Eighth Amendment protection against cruel and unusual punishment. ECF No. 1. The plaintiff claimed that the defendants acted with deliberate indifference to his medical needs by refusing to treat him for his chronic back

problem and/or provide him with a double mattress or hospital mattress to alleviate his back pain. *Id.* This Court issued its Initial Review Order on November 6, 2018 permitting the complaint to proceed on the Eighth Amendment claim against both defendants. ECF No. 7. The plaintiff filed an amended complaint on November 14, 2018. ECF No. 19. The defendants answered the amended complaint on March 8, 2019. ECF No. 23.

On November 26, 2018, the plaintiff filed his first motion for preliminary injunctive relief. ECF No. 9. He requested that this Court order the defendants to provide him with a "medium-size[d] hospital mattress" to alleviate his back pain. *Id.* at 3, 5. This Court denied the motion without prejudice because the plaintiff failed to establish imminent irreparable harm in the absence of a preliminary injunction. ECF No. 22 at 4. The Court relied on evidence presented by the defendants that (1) the plaintiff continues to be evaluated by Dr. Pillai on a regular basis, (2) the defendants provided the plaintiff with an additional mattress in January 2019 to alleviate his back pain, and (3) Dr. Pillai opined that a medical mattress was not appropriate for the plaintiff's condition. *Id.* However, the plaintiff presented evidence that, as of January 29, 2019, Nurse Shantay Wells submitted a written recommendation that the plaintiff be provided with a medical mattress for his ongoing back and leg pain, which the defendants had not yet reviewed at the time the first motion was filed. *See id.* Therefore, the Court permitted the plaintiff one opportunity to refile his motion for preliminary injunctive relief after the defendants had a chance to review Wells' assessment and recommendation. *Id.* at 4-5.

On May 3, 2019, the plaintiff filed his second motion for preliminary injunctive relief. ECF No. 28. He states that he was re-evaluated by Dr. Pillai on April 1, 2019, and

2

"it appear[s] that Dr. Pillai is in agreement with Nurse Wells' recommendation." ECF No. 28-8 at 2. He also has provided affidavits from other inmates at MWCI attesting to the inadequacy of the standard mattresses in the facility and averring that the plaintiff continues to suffer ongoing pain. *See* ECF Nos. 28-10, 28-11, 28-12, 28-13. Therefore, he requests an order that the defendants provide him with a "medium size[d] hospital mattress" to alleviate his ongoing back pain. ECF No. 28 at 1-2. In a written objection to the motion, Dr. Pillai states that, despite Wells' assessment, "there is no medical need for a medical mattress for Mr. Kyles." ECF No. 31 at 8.

On July 4, 2019, the defendants moved for summary judgment on the plaintiff's Eighth Amendment claim. ECF No. 33. They contend that no reasonable jury could conclude that they were deliberately indifferent to the plaintiff's medical needs based on the evidence presented, and alternatively, they are entitled to qualified immunity. ECF No. 33-1 at 7-8. The plaintiff filed an opposition to the defendants' motion and his own motion for summary judgment, contending that the defendants' refusal to provide him with a medical mattress constitutes deliberate indifference. ECF Nos. 34-2, 37-2. The defendants have not responded to the plaintiff's motion for summary judgment.

II. <u>Standard for Summary Judgment</u>

In a motion for summary judgment, the burden is on the moving party to establish that there is no genuine dispute as to any material fact and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law" and a dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Dister v. Continental*

3

*Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (mere existence of alleged factual dispute will not defeat summary judgment motion). The moving party may satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curium*) (internal quotations omitted; citations omitted).

When a motion for summary judgment is supported by evidence and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*

In reviewing the record, the Court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the Court must read his papers liberally and interpret them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, "[u]nsupported allegations do not create a material

4

issue of fact" and cannot overcome a properly supported motion for summary judgment. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003).[1]

   III.   Facts of the Case

The Court draws the following facts from the parties' Local Rule 56(a) Statements and supporting exhibits. ECF Nos. 33-2, 34-1, 34-4, 34-5, 37-1, 37-2.

In 2009, the plaintiff was diagnosed with a neurological disorder in his spine. ECF Nos. 34-1 at ¶ 1, 34-4 at 2. In 2010, he underwent bilateral laminectomies on his L-3 and L-5 vertebrae and an MRI, which revealed "severe multilevel spinal stenosis and foramina narrowing." ECF Nos. 33-2 at ¶ 4, 34-4 at 5, 7, 37-1 at ¶ 4. The procedures resulted in "good relief of [his] symptoms." ECF Nos. 34-1 at ¶ 1, 34-4 at 7. Dr. Pillai has been treating the plaintiff since 2010, when he started evaluating inmates at MWCI. ECF Nos. 33-1, 37-1. Dr. Pillai treats the plaintiff on a regular basis and is familiar with his back issues. ECF Nos. 33-1, 37-1.

In early 2017, the plaintiff's painful symptoms in his back resurfaced. ECF No. 34-1 at ¶ 2. He sent numerous written requests to DOC medical staff, including Dr. Pillai, complaining about the pain he was experiencing in his back and leg and that the medication he was prescribed was no longer providing him relief. *Id.*; ECF No. 34-4 at 9-16. The response to many of these requests was that the plaintiff had been scheduled for medical appointments and consultations. ECF No. 34-4 at 9-16. In May 2017, a second MRI was conducted, again revealing multilevel spinal stenosis. ECF Nos. 34-1 at

---

[1] The Defendants have complied with the notice requirement for pro se litigants set forth in Local Rule 56(b). (ECF No. 33-3.)

¶ 3, 34-4 at 18-23.  The plaintiff later received an epidural steroid injection ("ESI") which did not appear to help his condition.  *See* ECF No. 34-4 at 7.

On November 28, 2017, the plaintiff met with Nurse Shantay Wells at the UConn Health Center.  ECF Nos. 34-1 at ¶ 5, 34-4 at 5.  Wells informed him that he could opt for another ESI or surgery, but she recommended that surgery be the last option.  ECF Nos. 34-1 at ¶ 5, 34-4 at 5.  The plaintiff chose to try another ESI, which he received on February 7, 2018 and provided some relief for his pain.  ECF Nos. 34-1 at ¶ 6, 34-4 at 8.

The plaintiff was twice admitted to the UConn Health Center in February and March of 2018 for reasons unrelated to his claims against the defendants.  ECF Nos. 34-1 at ¶ 7, 34-4 at 37-38, 40-45.  While lying on the hospital mattress during those times, he never experienced pain or numbness in his hips, back, or legs.  ECF Nos. 34-1 at ¶ 8, 34-4 at 37-38.  When he returned to his housing unit in March 2018, he once again began experiencing pain in his shoulders, hips, and legs, despite being issued a new mattress.  ECF No. 34-1 at ¶ 10.

Beginning in June 2018, the plaintiff submitted inmate requests and Reasonable Accommodations Requests ("RARs") complaining about his medical issues and seeking either an extra mattress or a "hospital mattress" to alleviate his pain while sleeping.  ECF Nos. 34-1 at ¶¶ 11-16, 34-4 at 25-30.  In support of his request, he argued that he never felt pain while lying on the hospital mattress at UConn in February and March 2018.  ECF No. 34-4 at 28.  Officials told him that inmates were not permitted to have two mattresses and that he would have to wait at least one year before he could receive a replacement mattress unless medical personnel ordered otherwise.  *Id.* at 29, 31.

On August 16, 2018, the plaintiff had an appointment with Dr. Pillai during which he presented his RAR for approval. ECF Nos. 34-1 at ¶ 17, 34-4 at 28. Dr. Pillai told him to ask the ADA Coordinator to "verify" his medical condition. ECF Nos. 34-1 at ¶ 17, 34-4 at 28. On August 17, 2018, the plaintiff sent an inmate request to Nurse Furtick, asking why she had declined to give him an extra mattress, but another official responded that extra mattresses were not permitted for any inmates. ECF No. 34-4 at 31.

Despite receiving another replacement mattress on August 20, 2018, the plaintiff continued to file inmate requests and grievances, complaining about the pain he experienced every time he lay down and requesting either an extra mattress or hospital mattress. ECF Nos. 34-1 at ¶¶ 19-23, 34-4 at 33-36. The plaintiff was prescribed Elavil for his back pain, but he later requested to be taken off the medication because it caused him drowsiness, weakness, and lethargy. *See* ECF Nos. 34-1 at ¶¶ 25-26, 34-4 at 47-51, 54, 34-5 at 7.

On September 27, 2018, Dr. Pillai again evaluated the plaintiff and noted his request for an extra mattress. ECF No. 34-5 at 9. Dr. Pillai stated that he would address the issue with administrative officials. *Id.* Over the next two months, the plaintiff filed more requests stating that his pain was getting worse. ECF Nos. 34-4 at 54, 34-5 at 4.

Nurse Shanya Graham evaluated the plaintiff on November 21, 2018 and noted his history of spinal stenosis and his complaints about pain and numbness in his back and lower extremity while sleeping. ECF No. 34-5 at 7. She also noted that the plaintiff had been prescribed Elavil but later requested that it be discontinued due to the side effects and that the plaintiff wanted a hospital mattress to help alleviate his pain through the

night. *Id.* The plaintiff filed four more inmate requests in December 2018 complaining about his pain and requesting a "double mattress." *Id.* at 8, 10-12.

Sometime in early or mid-January 2019, the plaintiff was provided with an extra mattress for comfort, in response to his numerous requests. ECF Nos. 18-1 at ¶ 13, 33-4 at ¶ 13, 37-2 at ¶ 5. On January 29, he again met with Nurse Wells at the UConn Health Center, who reviewed his medical history and current condition. ECF Nos. 34-1 at ¶ 34, 34-5 at 17. In the "Recommendations" section of her consultation summary, Wells wrote, "Patient requires a medical mattress for back support and ongoing low[er] back and leg pain." ECF No. 34-5 at 17. She also wrote the following in her report:

> Mr. Kyles is a 66-year-old male who returns for a follow-up. History of L3-L4 and L4-L5 laminectomy done in 2010 by Dr. Senatus. He reports a recurrence of symptoms a year ago[;] however this is only aggravated upon lying down which he attributes to the poor condition of his mattress. At this time, he appears to be coping well requiring no use of pain mediations or frequent in[j]ections . . . Therefore, I do believe he would benefit from a medical mattress. He was asked to discuss this with the treating facility physician. Otherwise, no need for scheduled follow-up.

*Id.* at 21. Wells did not order any changes to the plaintiff's medication. *Id.*

On March 4, 2019, the plaintiff sent two inmate requests to Dr. Pillai and Nurse Furtick requesting that they review Wells' assessment and complaining that his neurological condition continued to cause him pain when he lay down on his assigned mattresses. ECF Nos. 34-1 at ¶ 38, 34-5 at 24, 25. One official answered the request addressed to Furtick, stating that the plaintiff should "refer to DOC/Custody" as "medical does not issue mattresses." ECF No. 34-5 at 25. He filed a third request to another official named Kristen Shea regarding his request for a medical mattress and stating that the two mattresses he currently had in his cell continued to aggravate his condition. *Id.* at 28. In response, Shea stated that the Health Services department "does not issue special

8

'medical mattresses.'" *Id.* at 29. She encouraged the plaintiff to discuss the issue further "with custody." *Id.*

Dr. Pillai evaluated the plaintiff again on April 1, 2019. ECF Nos. 34-1 at ¶ 40, 34-5 at 31. Dr. Pillai once again reviewed the plaintiff's medical history and noted his complaint of pain whenever he lay down, which he attributed to the poor quality of his mattress. ECF No. 34-5 at 31. After evaluating him, Dr. Pillai incorporated Wells' treatment plan, including her recommendation for a medical mattress, into his evaluation report. *Id.* He signed his name at the bottom of the report. *Id.* However, he later affirmed that a medical mattress is not "medically indicated" for the plaintiff's back issues. ECF No. 33-4 at ¶ 9. In Dr. Pillai's opinion, the standard "medium firm mattress" available at MWCI is more appropriate for the plaintiff's back issue; *id.* at ¶ 10; ECF No. 33-1 at ¶¶ 8-9; but the plaintiff asserts that those mattresses have a compression weight of only 60 to 70 pounds and go flat within four months. ECF No. 37-1 at ¶ 8, 37-2 at 47.

On April 11, 2019, the plaintiff sent an inmate request to Deputy Warden Hines asking whether MWCI officials were going to honor Wells' recommendation, with which Dr. Pillai appeared to concur. ECF Nos. 34-1 at ¶ 41, 34-5 at 33-34. In response, Hines wrote that the DOC "does not possess or issue medical mattresses; and, to be quite frank with you, [MWCI] only purchases one (1) style/type of mattress for the inmate population. Therefore, the answer to your question is 'No.'" ECF No. 34-5 at 34.

In June 2019, the plaintiff was evaluated by an APRN and requested pain medication for his chronic neurological condition. ECF Nos. 34-1 at ¶ 42, 34-5 at 37. The APRN prescribed him new medications to treat his condition. ECF Nos. 34-1 at ¶

42, 34-5 at 37-42. As of July 7, 2019, the plaintiff has not experienced any pain in his shoulders, hips, back or feet. ECF No. 34-1 at ¶ 42. He is currently able to sleep at night and is no longer feeling pain every time he lays down. *Id.* However, he believes the pain will return when his current medication regimen ends. *Id.*

IV. <u>Analysis</u>

In support of his motion for summary judgment, the plaintiff contends that the evidence shows the defendants' deliberate indifference to his serious medical needs "by failing to provide him with adequate medical treatment . . . and, in particular, the recommended medically needed medical mattress, which will alleviate [his] pain and suffering . . . ." ECF No. 34-2 at 1-2. He argues that Dr. Pillai is liable for failing to provide him with a medical mattress despite agreeing with Nurse Wells' recommendation and that Furtick is liable for refusing to provide him with a "second mattress when it was okay with Dr. Pillai." *Id.* at 8-11. In support of their motion, the defendants contend that (1) the plaintiff's back issue does not amount to a serious medical need under the Eighth Amendment, (2) there is no evidence that Furtick failed to follow Dr. Pillai's advice to issue the plaintiff an extra mattress, (3) Dr. Pillai provided adequate medical treatment to the plaintiff, and (4) the plaintiff's claim is barred by qualified immunity. *See* ECF No. 33-1 at 3-8.

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a claim for deliberate indifference to a serious medical need, a prisoner must show both that the deprivation was serious and that the defendant acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d

10

Cir. 2003) (citing *Estelle*, 429 U.S. at 105). More specifically, the plaintiff must show, first, that the alleged deprivation is "sufficiently serious," viewed objectively. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Hathaway*, 37 F.3d at 66). Second, the plaintiff must make a subjective showing, *i.e.*, that the defendants were actually aware of a substantial risk that the prisoner would suffer serious harm as a result of their actions or inaction. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006); *see also Hathaway*, 99 F.3d at 553 (official must disregard excessive risk to prisoner's health or safety).

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under § 1983. *See Salahuddin*, 467 F.3d at 280; *see also Estelle*, 429 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). Moreover, a difference of opinion regarding what constitutes an appropriate response and/or treatment to a prisoner's medical conditions does not establish an Eighth Amendment claim. *See Ventura v. Sinha*, 379 F. App'x 1, 2–3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

With respect to the objective prong, the defendants contend that the medical evidence does not show that the plaintiff's back condition was capable of causing "death, degeneration, or extreme pain." ECF No. 33-1 at 3-4. The medical evidence shows that, since 2009, the plaintiff has suffered from a neurological condition in his spine, which resurfaced in 2017, and was sufficient to warrant medical personnel to prescribe him pain medication in late 2018. *See* ECF Nos. 34-4 at 5, 18-23, 47-51, 34-5 at 7. Moreover, the

plaintiff sent numerous complaints about his ongoing pain while lying down, which medical personnel noted in their reports. *See* ECF Nos. 34-4 at 16, 25-30, 33-36, 34-5 at 7, 17. As late as January 2019, Nurse Wells commented that the plaintiff "*requires* a medical mattress for back support and ongoing low[er] back and leg pain." ECF No. 34-5 at 17 (emphasis added). Other courts within the Second Circuit have ruled that a chronic back injury may satisfy the objective prong of the deliberate indifference standard. *See Melecio v. Fischer*, Nos. 9:10-CV-289 (FJS/RFT), 9:10-CV-470 (FJS/RFT), 2011 WL 6987299, at *4 (N.D.N.Y. Sept. 27, 2011); *Dobbin v. Artuz*, 143 F. Supp. 2d 292, 302 (S.D.N.Y. 2001). The defendants have not provided any authority to support their contention that the plaintiff's condition fails to satisfy this standard.

Although the plaintiff contends that a medical mattress is the only remedy to alleviate his chronic pain and has presented some medical evidence to support that assertion; ECF No. 34-5 at 17; the defendants have also provided evidence that a standard prison mattress would be more appropriate for his condition. ECF No. 33-4 at ¶ 10. Thus, based on the evidence presented by both parties, the Court finds that there are genuine disputes of material fact with respect to the seriousness of the plaintiff's chronic back condition.

As for the subjective prong, the Court agrees that there are no genuine issues of material fact with respect to whether Nurse Furtick acted with deliberate indifference to the plaintiff's condition. There is no evidence that Dr. Pillai ever ordered Furtick to issue the plaintiff an extra mattress; ECF No. 33-4 at ¶ 11; and the plaintiff agrees that no such order was given. ECF Nos. 37-1 at ¶¶ 10-11, 37-2 at 24. The plaintiff filed only two inmate requests addressed to Furtick: one in August 2018 asking why she "turned [him]

down for a double mattress when it was okay with [Dr.] Pillai," and the other in March 2019 inquiring about a medical mattress in response to Wells' recommendation. ECF Nos. 34-4 at 31, 34-5 at 25. A different medical official responded to both requests. *Id.* Thus, the evidence does not even show Furtick's awareness of the plaintiff's situation, let alone her involvement in depriving him of medical care. *See Lebron v. Semple*, No. 3:18-CV-1017 (JAM), 2018 WL 3733972, at *4 (D. Conn. Aug. 6, 2018) (failure to respond to letter of complaint does not constitute the personal involvement necessary to maintain [§] 1983 claim). The plaintiff alleges that Dr. Pillai sent another nurse named Vivian to ask Furtick about providing him with an extra mattress, and Furtick refused to provide one. ECF Nos. 34-3 at 10, 37-1 at 5. He also asserts, in conclusory fashion, that Furtick "acted in concert with Dr. Pillai" in depriving him of medical care. ECF No. 37-2 at 20-21. He has not, however, presented any evidence to show that he has personal knowledge sufficient to testify to these allegations, and he has submitted no evidence other than his own statements to support them. The Court can find no record of any statements or conduct by Furtick regarding the plaintiff's condition. Therefore, the Court agrees that no reasonable jury could conclude from the evidence that Furtick acted with deliberate indifference to the plaintiff's serious medical needs.

There are genuine issues of material fact, however, with respect to Dr. Pillai's liability. While the plaintiff agrees that Dr. Pillai has been treating him since 2010 and that the plaintiff has received care for his chronic back condition, the issue of whether a medical mattress is needed to alleviate his chronic back and leg pain remains unresolved. On January 29, 2019, the plaintiff underwent an Ortho-spine consultation with Nurse Wells, who noted the history regarding his condition, and concluded that the plaintiff

"*requires* a medical mattress for back support and ongoing low[er] back and leg pain." ECF No. 34-5 at 17 (emphasis added). In a separate section of her report, Wells stated that she believed the plaintiff "*would benefit from* a medical mattress [and] asked [him] to discuss [it] with the treating facility physician." *Id.* at 21 (emphasis added). When Dr. Pillai evaluated the plaintiff on April 1, 2019, he appeared to incorporate Wells' conclusion that the plaintiff "would benefit from a medical mattress" in his own report, which he signed. ECF No. 34-5 at 31. He later testified, however, that a medical mattress "is not medically indicated for [the plaintiff]." ECF Nos. 31 at ¶ 9, 33-4 at ¶ 12. It is not clear from the record why Dr. Pillai would endorse Wells' conclusion that the plaintiff "would benefit from a medical mattress" and, at the same time, conclude that it was "not medically indicated" for the plaintiff's condition. The discrepancies in Dr. Pillai's own findings present a genuine issue of fact regarding his response to the plaintiff's chronic medical condition.[2]

Dr. Pillai argues, in the alternative, that he is entitled to qualified immunity on the plaintiff's claim. ECF No. 33-1 at 7-8. The Court cannot conclude at this time that qualified immunity bars the Eighth Amendment claim. "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). At this stage, there remain genuine issues of fact as to whether

---

[2] This does not appear to be a disagreement between two medical providers, which would not be sufficient to support a claim of deliberate indifference. Instead, the record is simply unclear on whether Dr. Pillai initially endorsed Nurse Wells' apparent medical opinion that the plaintiff had a need for a medical mattress.

a medical mattress is needed for the plaintiff's condition and whether Dr. Pillai at one time endorsed that view. Therefore, summary judgment is not warranted on the ground of qualified immunity.

Based on the foregoing, the Court concludes that summary judgment is warranted in favor of Furtick but not warranted for the plaintiff or Dr. Pillai. Thus, the defendants motion for summary judgment, ECF No. 33, is GRANTED with respect to Furtick and DENIED with respect to Pillai, and the plaintiff's motion for summary judgment, ECF No. 34, is DENIED.[3]

V.      Motion for Preliminary Injunction

The plaintiff seeks a preliminary injunction in the form of an order for the defendants to provide him with a "medium size[d] hospital mattress" based on Wells' January 29, 2019 assessment and Dr. Pillai's response. *See* ECF Nos. 28, 28-1, 28-5, 32. The defendants counter that such relief is not warranted based on Dr. Pillai's continuing treatment of the plaintiff and his conclusion that a hospital mattress is "not medically indicated" for the plaintiff's condition. ECF No. 31. In addition, the plaintiff's recent summary judgment filings state that he is not currently experiencing back or leg pain due to a medication regimen he recently started. Although the plaintiff avers that once the

---

[3] In his motion for summary judgment, the plaintiff argues that Deputy Warden Hines also acted with deliberate indifference to his medical needs "by allowing [Pillai and Furtick] to continue to provide inadequate medical care . . . and [by] not ordering [them] to provide [him] with the recommended required medical mattress in his own words." ECF No. 34-3 at 7. He relies on Hines' response to his April 11, 2019 inmate request that DOC does not possess or issue medical mattresses to inmates. ECF No. 34-5 at 34. The Court dismissed Hines as a defendant on January 28, 2019 because the plaintiff failed to state a plausible claim against him in his amended complaint. *See* ECF No. 20. To the extent the plaintiff is now asking the Court to reinstate Hines as a defendant based on his more recent response to the inmate request, his request is denied. Discovery closed on May 6, 2018. *See* ECF No. 7. Amending the complaint once again to include Hines as a defendant at this stage of the proceeding would be unduly prejudicial to the defendants and cause unnecessary delay. Moreover, Hines' denial of one inmate request does not sufficiently establish that he acted with deliberate indifference to the plaintiff's medical needs. *See Jusino v. Mark Frayne*, No. 3:16-CV-961 (MPS), 2016 WL 4099036, at *5 (D. Conn. Aug. 2, 2016) (denial of grievance alone does not establish personal involvement of supervisory official).

medication "run[s] its course," the pain will return unless he is given an adequate mattress (*id.*), this is speculation.  In light of the plaintiff's admission that the medication is currently providing him with relief, he cannot satisfy the irreparable harm requirement for a preliminary injunction.  *Reuters Ltd. v. United Press Intern, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) ("[A] showing of irreparable harm is the single most important prerequisite of a preliminary injunction."); *Donahue v. Patterson*, 715 F. Supp. 2d 306, 314 (N.D.N.Y. 2010) ("To establish irreparable harm, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.").  I must therefore DENY the motion for preliminary injunction (ECF No. 28).  Nonetheless, because the plaintiff requested the same injunctive relieve in his complaint (ECF No. 1 at 13), he will be allowed to pursue his effort to obtain a medical mattress at trial.

**ORDERS**

(1) The defendants' motion for summary judgment, ECF No. 33, is GRANTED in part and DENIED in part.  Summary judgment is entered in favor of Nurse Furtick, and the clerk is directed to terminate her as a defendant to this case.  The case will proceed on the Eighth Amendment claim against Dr. Pillai.

(2)	The plaintiff's motion for preliminary injunction, ECF No. 28, and motion for summary judgment, ECF No. 34, are DENIED.

(3)	The Clerk is directed to appoint pro bono counsel to represent the plaintiff.  Within thirty days of appointment, pro bono counsel shall meet with her or his client,

shall confer with defense counsel, and shall request a status conference with the court to discuss next steps. All remaining deadlines in the case are suspended pending the status conference.

IT IS SO ORDERED.

Dated at Hartford, Connecticut this 4th day of September 2019.

/s/
Michael P. Shea
United States District Judge